Anthony Paul FREE *v.* STATE of Arkansas

CA CR 85-205                                    717 S.W.2d 215

Court of Appeals of Arkansas
En Banc
Opinion delivered October 8, 1986

86

*Darrell E. Baker, Jr.*, Deputy Public Defender, and *Francis D. Crumpler, Jr.*, for appellant.

*Steve Clark*, Att'y Gen., by: *Connie Griffin*, Asst Att'y Gen., for appellee.

LAWSON CLONINGER, Judge. Appellant, accused of engaging in deviate sexual activity with a person under the age of eleven, was charged with five counts of rape. The jury found appellant guilty of three of the charges and appellant was sentenced to ten years on each charge with two of the sentences to run concurrently. For his appeal, appellant argues four points for reversal: 1) that his confession was not voluntary and should have been suppressed; 2) that the trial court unduly restricted examination of a witness and the victim; 3) that it was error for the trial court to allow the victim to testify about other wrongs committed by appellant; and 4) that the state improperly questioned appellant about prior acts and the trial court should have declared a mistrial. We do not agree with any of appellant's arguments and affirm.

Appellant's nephew, aged nine, called the police and told them that he had been raped by his "Uncle Andy." Several days later Floyd J. Hancock, a detective sergeant with the Springdale, Arkansas, police department, went to appellant's residence and asked appellant to come to the station and answer some questions regarding his nephew's complaint. Appellant replied that he had a job interview and would come in later, which he did. Sergeant Hancock, testifying at a *Denno* hearing, stated that he read appellant his Miranda rights and recorded appellant's responses. To test appellant's literacy, he asked appellant to read one of the questions out loud, which appellant was able to do. Appellant then initialed each of the questions and signed the form. Sergeant Hancock also signed the form.

The interview with appellant took approximately one hour. During that time, Sergeant Hancock discussed with appellant a seminar he had attended. He told appellant that he had learned at the seminar that adult males who have a sexual preference for young males were extremely difficult to help and that the first step towards getting help was to admit that they had a problem to begin with. Sergeant Hancock also told appellant that it was possible for the court to order counseling and there might be counseling at the penitentiary. Appellant then gave a statement in which he admitted he had allowed his nephew to perform oral sex on him on five different occasions, but he alleged that it was his nephew who always initiated it. It is appellant's contention that Sergeant Hancock's statements about counseling amounted to promises of leniency and therefore his statement was not given voluntarily and should have been suppressed.

There is a presumption that an in custody confession is involuntary and the burden is on the state to show the statement to have been voluntarily, freely and understandably made, without fear or hope of reward. *Tatum v. State*, 266 Ark. 506, 585 S.W.2d 957 (1979). The appellate court makes an independent determination based upon the totality of the circumstances, with all doubts being resolved in favor of individual rights and safeguards, and the court will not reverse the trial court's holding unless it is clearly erroneous. *Harvey v. State*, 272 Ark. 19, 611 S.W.2d 762 (1981). Any conflict in the testimony of different witnesses is for the trial court to resolve. *Harvey, supra.*

When we consider the totality of the circumstances we consider both statements the police made to the accused and how vulnerable the accused is. *Davis v. State*, 275 Ark. 264, 630 S.W.2d 1 (1982). We find that no promises were made to appellant for leniency. In fact, Sergeant Hancock's statements implied that appellant would be punished. Nor do we think appellant was particularly vulnerable. The questioning lasted about one hour, he was read his rights, and Sergeant Hancock took particular care to make sure appellant understood them. There was no indication that appellant was not sober, and appellant was allowed to come to the police station at his own convenience. We believe the trial court's finding that appellant's confession was made voluntarily is not clearly erroneous. *See Davis, supra.*

Appellant next argues that the trial court unduly restricted his right to examine witnesses. Robert Tomlinson was called as a defense witness to testify about a conversation he had with the victim prior to appellant's arrest. The state objected on the grounds that it was hearsay and the court sustained the objection. Appellant then made a proffer of Mr. Tomlinson's testimony. Tomlinson was expected to testify that while the victim was angry with Tomlinson he threatened to call the police and tell them that Tomlinson had raped him. Appellant then called the victim and attempted to elicit testimony about the threat to Tomlinson. The trial court found that the testimony would be irrelevant to the issue of appellant's guilt. It is appellant's contention that the evidence is relevant to show that the victim may have had a motive for his accusations and that they may not have any basis in reality. We agree with the trial court's ruling.

The alleged threat would be a collateral matter and a witness cannot be impeached on a collateral matter by calling another witness to contradict the testimony of the first witness. *Kellensworth v. State*, 275 Ark. 252, 631 S.W.2d 1 (1982). An issue that cannot be independently proven is collateral. *Kellensworth, supra.* The proper time to raise the matter was on cross examination of the victim, and appellant failed to do this. In his ruling, the trial judge specifically stated that the victim was expected to deny making the threat. At that point, it would become improper to allow Tomlinson to testify that the threat was made. Such a tactic would have distracted the jury from the main issue and wasted time. *Kellensworth, supra.*

Appellant also contends that it was error for the trial court to refuse to exclude the victim's testimony of other wrongs committed by appellant. By agreement, the state was confined to charging appellant with only the five instances of oral sex to which appellant had confessed. At a pre-trial hearing the court declined to rule on the admissibility of evidence regarding instances of anal sex. During the trial the victim was allowed to testify about the instances of anal sex.

U.R.E. Rule 404(b) makes admissible evidence of other crimes, wrongs or acts for the purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The evidence must have relevancy

independent of a mere showing that the defendant is a bad character. *Collins v. State*, 11 Ark. App. 282, 669 S.W.2d 505 (1984).

In appellant's confession he denied that he was the one that made sexual overtures to the victim; he claimed that it was the victim who initiated any sexual contact. At trial, appellant denied that there had been any sexual contact at all. He alleged that he made the statement he did only because he was "ready to get out of there and go home."

In trials for incest or carnal abuse the state may show other acts of intercourse between the same parties to show the relation and intimacy of the parties, their disposition and antecedent conduct toward each other. *Collins, supra.* We believe the evidence complained of by appellant was relevant to show that appellant's participation was not just passive acceptance of his nephew's advances, as he alleges.

Appellant's last argument regards the court's refusal to grant a mistrial after the state had alluded to prior similar conduct. During cross examination of appellant, the state asked him if he had ever been offered therapy. Appellant denied it and then the state asked if he had ever done anything like this before. Again appellant's response was no. The state then asked, "Wasn't there a time, three years ago, when something like this happened and you had a chance to get some therapy?" Appellant then objected and requested a mistrial. The trial court refused the request but did admonish the jury to disregard the statement. It is appellant's argument that the admonishment did not erase the prejudice formed in the minds of the jury. We disagree.

Appellant relies on the case of *Maxwell v. State*, 279 Ark. 423, 652 S.W.2d 31 (1983), in which the prosecutor asked the defendant if he had previously pled guilty to raping an eleven-year-old girl and been sentenced to thirty years. In that case, the Arkansas Supreme Court found that a mistrial should have been granted. However, that case can be distinguished from the one at bar. Here appellant was given a chance to deny the statement, appellant did not previously plead guilty nor was he convicted, and the allusion to previous misconduct was not specific. In *Maxwell, supra*, the court noted that it was obvious that the prosecutor's remarks were deliberate. There was no evidence of

any deliberate misconduct in this case.

■ The granting of a mistrial is a drastic remedy and should be resorted to only when justice cannot be served by continuing with the trial. *Avery* v. *State*, 15 Ark. App. 134, 690 S.W.2d 732 (1985). The trial court is vested with considerable discretion because of his superior position to determine the possibility of prejudice, and that discretion will not be reversed in the absence of manifest abuse. *Avery, supra.*

■ We do not think that the state's remarks were prejudicial in light of the fact that appellant was charged with five counts of rape and only convicted of three. The trial court's admonition was sufficient. An admonition from the presiding judge to the jury cures the prejudicial statement unless the error is so prejudicial that justice could not be served by continuing the trial. *Brewer* v. *State*, 269 Ark. 185, 599 S.W.2d 141 (1980). We do not find any abuse of the trial court's discretion.

Affirmed.

GLAZE, CORBIN, and COOPER, JJ., dissent.

JAMES R. COOPER, Judge, dissenting. Because I believe that the trial court erred in failing to grant the appellant's request for a mistrial, based on the State's improper questioning of the appellant, I must respectfully dissent.

While the State was cross-examining the appellant, the following exchange took place:

> Q. Have you ever had a chance for therapy before, Mr. Free?
>
> A. No.
>
> Q. Have you ever done anything like this before?
>
> A. No.
>
> Q. Are you positive about that?
>
> A. I am positive.
>
> Q. *Wasn't there a time*, three years ago, *when something like this happened* and you had a chance to get some therapy.

## A. *I was accused of it, yes*, but . . .

(Emphasis added.) At this point the appellant's attorney objected and requested a mistrial, claiming that the last question was an improper inquiry into a prior bad act. The court sustained the objection and denied the motion for mistrial, saying:

> I think the question was—this witness testified on direct, or on cross, I guess it was, that he didn't feel like there was any need for therapy, although he thought that might be one possibility that Officer Hancock was extending to [him] after he confessed. He thought Officer Hancock was offering him possible therapy. He then testified he didn't think he needed therapy because he didn't think he had a problem. *Now, [the prosecutor's] question was getting to the point that some time in the past he had been offered therapy, and that is about as far as it went.* I understand your concern but *there has been no allegation, and I don't think there should be, of prior bad acts.*

(Emphasis added.) The court went on to give a cautionary instruction, in lieu of the mistrial, telling the jury to disregard totally any reference to any offer of therapy being extended to the appellant in the past.

The trial court erred in finding that there was no allegation of any prior bad acts and in denying the mistrial. While the State could question the appellant about his past possibilities for therapy, without bringing in the prior bad acts, it crossed the line with its last question, when it asked, "wasn't there a time, . . . when something like this happened," particularly in light of the appellant admitting in his answer that he had been accused of it. Furthermore, the admonition to the jury does not cure this error.

In *Maxwell* v. *State*, 279 Ark. 423, 652 S.W.2d 31 (1983), the Supreme Court held that no less than a mistrial could cure the error caused by the prosecutor deliberately asking Maxwell if he had been convicted of raping an eleven-year-old girl. The majority claims that *Maxwell* can be distinguished from the case at bar because here the appellant was given the chance to deny the statement, the appellant had not pled guilty, nor was he convicted of the crime, and the allusion to the prior act was not specific. I find no substantial difference between this case and *Maxwell*. It is

inconsequential whether the appellant had the chance to deny participation in the prior act, had not pled guilty to the act, or had not been convicted of the act. As previously stated, the appellant's answer to the last question clearly infers that the appellant had been involved in a prior case involving rape of a child, at least as a suspect. The Uniform Rules of Evidence do not provide that evidence of prior bad acts are inadmissible only if the appellant had been convicted of or pled guilty to the act. *See generally* Unif. R. Evid. 403-404, 608-9, Ark. Stat. Ann. § 28-1001 (Repl. 1979). Furthermore, I disagree that the allusion was not specific. While the State did not directly ask the appellant in this case if "wasn't there a time, . . . when you raped an eleven-year-old child," it came as close as one could without actually using those words, when, in a trial for the rape of a nine-year-old child, the State asked the appellant if there wasn't a time "when something like this happened."

The majority says there is no evidence of any deliberate misconduct by the prosecution in this case. I again must disagree. The record indicates that the prosecuting attorney knew of the prior incident, and then, at the very end of cross-examining the appellant, threw in a reference to "something like this happening" three years ago, in an attempt to impeach the appellant's testimony as to therapy. I find, as did the Supreme Court in *Maxwell*, that the prosecutor's conduct must have been deliberate, as he could not have reasonably expected the appellant to admit he had been involved in the rape of another child three years ago.

Finally, the mistrial should have been granted even if there is no evidence of deliberate misbehavior on the part of the prosecutor. In *Lackey v. State*, 283 Ark. 150, 671 S.W.2d 757 (1984), the Supreme Court reversed the trial court for failure to grant a mistrial after admission of evidence that the defendant in a rape case had offered drugs to the victim's cousins and sister, ages five, six, and eleven, respectively. Unlike *Maxwell*, and like here, the prosecutor had contended that the evidence was admissible (there to show the cause of friction between the defendant and the victim's family brought out by the defense). The Supreme Court stated:

Evidence of other crimes has long been considered the type

that has no place in a trial. . . . [W]e have consistently held that admission of such evidence is cause for a new trial. . . . The admonition in this case was useless, the damage having been done. *See Maxwell* v. *State*, 279 Ark. 423, 652 S.W.2d 31 (1983). The mere mention of "friction" by the defense was no reason to allow this type of evidence before the jury. . . . The error can only be cured by a new trial.

283 Ark. at 152-3; *accord, Allard* v. *State*, 283 Ark. 317, 675 S.W.2d 829 (1984). In *Lackey*, there was no evidence to show that the prosecutor deliberately asked inadmissible questions or that the defendant had been convicted of those crimes. It simply did not figure in the Court's decision. Instead, in both *Lackey* and the case at bar, the prosecution argued that the line of questioning had been opened up by the defense. The Court in *Lackey* rejected that argument, and we should reject it here. The error here is even more prejudicial than the error in *Lackey* and *Maxwell*, as it not only involves a terrible crime against a child, it is a crime similar to the one for which the appellant stood trial.

I am authorized to say that Corbin and Glaze, JJ., join in this dissent.