Ray DILLARD *v.* STATE of Arkansas

CA CR 86-137                                      723 S.W.2d 373

Court of Appeals of Arkansas
En Banc
Opinion delivered February 11, 1987

*Willis V. Lewis*, for appellant.

*Steve Clark*, Att'y Gen., by: *William Fred Knight*, Asst. Att'y Gen., for appellee.

JAMES R. COOPER, Judge. The appellant in this criminal case was charged with burglary, a violation of Ark. Stat. Ann. § 41-2002 (Repl. 1977). After a jury trial, the appellant was convicted of that charge and sentenced to five years in the Arkansas Department of Correction. From that conviction, comes this appeal.

For reversal, the appellant contends that the evidence was insufficient to support a conviction for burglary. In addition, he asserts that the trial court erred in failing to grant his motions for mistrial based on four events connected with the trial of the case: a statement by a prospective juror; a witness's question from which the jury might infer that the appellant had a criminal record; a witness's remark tending to focus attention on the appellant's failure to testify in his own behalf; and the presence of witnesses in the courtroom during opening statements after the defense had invoked A.R.E. Rule 615. We find these arguments to be unpersuasive and we affirm.

Pursuant to *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984), we first consider the sufficiency of the evidence to support the appellant's conviction. In so doing we review the evidence in the light most favorable to the appellee and affirm if the verdict is supported by substantial evidence. *Lair* v. *State*, 19 Ark. App. 172, 718 S.W.2d 467 (1986). Substantial evidence is evidence which induces the mind to go beyond mere suspicion or conjecture, and is of sufficient force or character to compel a conclusion one way or the other with reasonable certainty. *Harris*, 284 Ark. at 252; *Jones* v. *State*, 11 Ark. App. 129, 668 S.W.2d 30 (1984).

Arkansas Statutes Annotated § 41-2002(1) (Repl. 1977) provides that:

> A person commits burglary if he enters or remains unlawfully in an occupiable structure of another person with the purpose of committing therein any offense punishable by imprisonment.

In the case at bar the "offense punishable by imprisonment" upon which the burglary conviction was founded was theft of property. For reversal, the appellant contends that the evidence of intent to commit theft of property was insufficient. We do not agree. Viewed in the light most favorable to the appellee, the evidence shows that Albert Atchley and his family returned to their home to find that a bedroom light, which had been off when they left the house, was then lit. As he entered the house, Mr. Atchley saw that the back door had been removed. Atchley's daughter, Melissa, then noticed that the light that had been on in her room was off. The police were summoned and Deputy Jim Brunson arrived

shortly thereafter. Deputy Brunson searched Melissa's room and found the appellant hiding between the wall and the bed, with blankets and covers partially pulled over him. The deputy removed a hunting knife from the appellant's person, then retrieved the appellant's shotgun from under the bed. Brunson testified that he had seen nothing else under the bed at that time, but that it was possible that other objects might have been concealed by the blankets and covers under which the appellant had been hiding. The deputy further stated that he removed the appellant from the house rather quickly, out of a concern that the appellant might be harmed by Mr. Atchley, who was quite irate.

Melissa testified that, soon after the appellant was removed from the Atchley home, she noticed that some of her money and jewelry were missing, and that she found the missing money and jewelry in a little pile under the bed where the appellant had been hiding. She further stated that she had not placed those objects there herself. Mr. Atchley took the items to the sheriff's office the next day.

Intent is not ordinarily capable of proof by direct evidence, and must therefore be inferred from the circumstances. *Parris v. State*, 270 Ark. 269, 604 S.W.2d 582 (1980). The circumstances in the case at bar are that the missing money and jewelry were found wadded up in a pile under the bed, where the appellant had been hiding when apprehended. Moreover, Melissa stated positively that it was she and not her father who discovered the items under the bed, and that she did not place them there herself. We find these circumstances to be indistinguishable from those presented by *Jimenez v. State*, 12 Ark. App. 315, 675 S.W.2d 853 (1984), where we held that the requisite intent could be inferred from the fact that items in the burglarized home had been gathered up, as if to be carried off, coupled with the homeowner's testimony that neither he nor his sister had moved them. We thus hold the evidence to be sufficient to support a conviction for burglary.

The appellant also urges several points for reversal based upon the trial court's refusal to grant a mistrial at various stages of the proceeding. The first of these points arises out of the statement by a prospective juror at voir dire that he could "save the court a lot of time" and that he once "had a personal

confrontation with" the appellant. This prospective juror was excused for cause upon the defense attorney's motion. After the jury had been selected, the appellant requested a mistrial. It is argued that the prospective juror's statement prejudiced the rest of the jurors against the appellant, and that the trial court erred in refusing to grant a mistrial.

We first note that the appellant failed to preserve for appeal any error that might have resulted from the prospective juror's statement. An argument for reversal will not be considered in the absence of an appropriate objection in the trial court. *Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980). To be considered appropriate, an objection must be made at the first opportunity. *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981). The record shows that the appellant in the instant case failed to make a timely objection, for he allowed twenty-four prospective jurors to be voir-dired between the time of the allegedly prejudicial statement and his motion for a mistrial. Moreover, we would reach the same result even if the appellant had preserved this issue for review. The impartiality of a jury is a question addressed to the sound discretion of the trial court, and the appellant must demonstrate a manifest abuse of that discretion to warrant reversal. *McFarland* v. *State*, 284 Ark. 533, 684 S.W.2d 233 (1985). Here, the prospective juror's statement that he could "save the court a lot of time" was ambiguous, and seems, in the context of the full record, to mean that the prospective juror knew he could not be impartial toward the appellant because of their prior confrontation: seen in this light, the statement meant only that the questions propounded to the previous potential juror need not be asked, thus "saving time" for the court. Finally, the jurors ultimately selected all stated that they were able to give the appellant a fair and impartial trial. Given these circumstances we do not think that the trial court manifestly abused its discretion in denying the appellant's motion for mistrial.

The appellant also asserts that the trial court erroneously refused to grant a mistrial where the appellant's attorney invoked A.R.E. Rule 615, but the witnesses were not sequestered until the conclusion of the attorneys' opening statements.

Rule 615 provides, in pertinent part, that

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses . . . .

Arkansas Statutes Annotated § 28-1001 (Repl. 1979), A.R.E. Rule 615. While we agree with the appellant that the Rule is mandatory when requested by one or both of the parties, *Morton v. Wiley*, 271 Ark. 319, 609 S.W.2d 322 (1980), we are unable to determine from the record before us that the Rule was in fact requested prior to the close of opening statements. We do not reverse the trial judge on facts outside the record. *Harvey v. Castleberry*, 258 Ark. 722, 529 S.W.2d 324 (1975). The only affirmative showing of a request to invoke the Rule was a request by the appellant's attorney that the witnesses be sequestered after the close of opening statements, and it is within the trial court's discretion to grant such a request after the trial has commenced. *See Morton v. Wiley, supra.* Moreover, it is clear that, although the witnesses heard the attorneys' opening statements, they were not present in the courtroom while testimony was being heard. The circumstances in the case at bar are thus distinguishable from the situation presented in *Fite v. Friends of Mayflower, Inc.*, 13 Ark. App. 213, 682 S.W.2d 457 (1985). In *Fite* we reversed the decision of a chancellor who allowed witnesses to remain in the courtroom and hear testimony over the objection of opposing counsel. 13 Ark. App. at 214-16. In the case at bar the witnesses were sequestered before they had the opportunity to hear the testimony of other witnesses, and therefore we find no error in the trial court's refusal to grant a mistrial.

We next consider the appellant's contention that it was error to refuse to grant a mistrial after a witness's nonresponsive answer which implied that the appellant had a criminal record. This point for reversal is based upon the following exchange at trial between the arresting officer and the defense counsel:

Q   Well, now, Jim, you know I'm not making fun of you.

A   I know.

Q   But we've got a purpose here.

A   I know.

Q  I'm not a medical doctor or a psychiatrist or a psychologist.

A  Let me—let me ask you something before we get—I don't understand why it is that medical history can be brought up in this trial and criminal history cannot. History is history, am I correct?

Q  Well—

With respect to nonresponsive answers, the rule is that

> when a witness, in response to a proper question, gives a nonresponsive answer stating matter that is incompetent and inadmissible as evidence, the trial court, on motion, should strike out the answer or so much of it as is improper and direct the jury to disregard it as evidence in the case.

*Queary* v. *State*, 259 Ark. 123, 124, 531 S.W.2d 485, 486 (1976). The appellant in the case at bar did not request that the jury be admonished to disregard the nonresponsive answer, but instead made only a motion for mistrial. Mistrial is a drastic remedy which should be resorted to only when the error is so manifestly prejudicial that justice cannot be served by continuing with the trial. *Avery* v. *State*, 15 Ark. App. 134, 690 S.W.2d 732 (1985). Because the trial judge is in a superior position to assess the possibility of prejudice, he is vested with great discretion in acting on motions for mistrial, and we will reverse only where that discretion is manifestly abused. *Id.* In the case at bar, the witness's nonresponsive answer did no more than raise the possibility that the appellant might have a criminal record. We think that any prejudice caused by this comment could have been cured by an admonition to the jury, and we hold that the trial court did not err in refusing to grant the appellant's motion for mistrial.

▮  The final point for reversal to be considered is the appellant's argument that the trial court erred in not ordering a mistrial following a witness's nonresponsive answer tending to focus attention on the appellant's failure to testify in his own behalf. Asked if the statement given by the appellant had been induced by promises or threats, the arresting officer answered:

No, sir. I believe if you will ask him, he'll tell you the same

thing, you know. Nobody said—nobody bothered him.

The appellant's attorney made a non-specific objection to this testimony; the court sustained the objection and admonished the witness to refrain from making nonresponsive answers. However, the appellant's attorney neither requested that the jury be admonished nor moved for a mistrial. The attorney was apparently satisfied with the trial court's admonition to the witness, and in light of his failure to ask the trial court to take any action, this issue has not been preserved for appellate review. *See Foots* v. *State*, 258 Ark. 507, 528 S.W.2d 135 (1975). Nor would the result differ had the point been properly preserved. Read in context, we do not think that the witness's answer focused attention on the appellant's failure to testify to such an extent that justice could not be served by continuing with the trial. *See Perry* v. *State*, 279 Ark. 213, 650 S.W.2d 240 (1983); *Avery* v. *State, supra.*

Affirmed.

CORBIN, C.J., and JENNINGS, J. concur.

JOHN E. JENNINGS, Judge, concurring. I agree with the result reached in this case. I do not agree that the police officer's gratuitous reference to the defendant's "criminal history" might be non-prejudicial, nor do I agree that the damage could be cured by an admonition from the court.

However, as the excerpt from the testimony shows, counsel was making a series of statements to the witness and then permitted the witness to start asking questions. He could have asked the court to stop the witness and no doubt the court would have done so. In short, this was invited error.

CORBIN, C.J., joins.