Humberto Ulloa JIMENEZ *v.* STATE of Arkansas

CA CR 87-56                                    749 S.W.2d 331

Court of Appeals of Arkansas
Division II
Opinion delivered April 27, 1988

*Pruitt & Hodnett*, by: *Roger T. Jeremiah*, for appellant.

*Steve Clark*, Att'y Gen., by: *Olan W. Reeves*, Asst. Att'y Gen., for appellee.

JAMES R. COOPER, Judge. The appellant in this criminal case was charged with aggravated robbery, a violation of Ark. Stat. Ann. § 41-2102 (Supp. 1985) [Ark. Code Ann. § 5-12-103 (1987)]. He was convicted of that charge after a jury trial, and was sentenced to fifteen years in the Arkansas Department of

Correction. From that conviction comes this appeal.

For reversal, the appellant contends that the trial court erred in refusing to dismiss the case because he was too intoxicated to form the purposeful intent necessary to commit the offense; that the testimony of the accomplice was not sufficiently corroborated; and that the trial court should have declared a mistrial when two witnesses made statements that implicated the appellant in other robberies. We find no error and affirm.

The record shows that on December 16, 1985, Rafael Gonzales entered a liquor store in Ft. Smith, Arkansas. He asked one of the owners, Donna Deem, for money. Ms. Deem stated that he had a gun and that, after she told him she did not have any money, Gonzales followed her as she started towards the door of the office. Gonzales then picked up a pint bottle of Calvert Extra Whiskey. Ms. Deem then heard her husband open the desk drawer in the office and, assuming that he was getting his gun, she dropped to the floor. Mr. Deems then began firing at Gonzales and Gonzales fled out the door. Gonzales later died of the gunshot wounds he received. The appellant, Humberto Jiminez, was arrested a few minutes later in the vicinity of the liquor store in an obviously inebriated state. The appellant had blood stains on his clothes, and was in possession of a pint bottle of whiskey resembling that which Gonzales had carried out of the store. He was later charged with aggravated robbery.

At a pre-trial hearing the appellant put on testimony concerning his alleged intoxication on the night of the robbery. Harold Haney, employed by the Ft. Smith police department, testified that he gave a breathalyzer test to the appellant on the night of the robbery. The appellant registered a blood alcohol content of .245. Haney stated further that the appellant was able to follow his directions. John Dugan, a drug and alcohol counselor with the Harbor House, stated that, in his opinion, if a person with a blood alcohol content of .245 was able to function in an apparently normal manner, then that person was probably in a blackout and unaware of his actions. At the close of this testimony the trial court denied the appellant's motion to dismiss based on the fact that the appellant was too inebriated to form the requisite purposeful mental state. The appellant later put on the same evidence before the jury.

██ The Arkansas Supreme Court has recently held that voluntary intoxication is no longer a defense to criminal prosecutions. *White* v. *State*, 290 Ark. 130, 717 S.W.2d 784 (1986). The State agrees that this defense was available to the appellant because *White* had not been decided at the time. We need not decide whether this defense was available because the appellant has the burden to establish the defense by the preponderance of the evidence. *Coleman* v. *State*, 12 Ark. App. 214, 671 S.W.2d 221 (1984), and, on this record, we cannot say that the appellant established, as a matter of law, that he was so intoxicated as to be incapable of forming the requisite mental state to commit aggravated robbery. The appellant's girlfriend, Teresa Pedroso, testified that the appellant, Gonzales, and Lazro Martinez were present in her home earlier on the day of the robbery. She stated further that she overheard them planning the robbery and that at the time they had not been drinking. She did see them later in the evening and at that time she noticed that they had been drinking and that they were drunk. Martinez testified that after Gonzales had been shot, the appellant refused to leave in the car with Martinez because he did not want to leave his friend. According to the testimony, at some point the appellant took the bottle of whiskey from Gonzales and attempted to leave the scene of the crime. All of these actions, along with the testimony of the police officers that the appellant was cooperative and able to follow directions, indicate that the appellant was capable of purposeful action, and we think the issue was properly presented to the jury.

At the close of the State's case, the appellant requested a dismissal based on the assertion that the testimony of the accomplice, Lazro Martinez, was not sufficiently corroborated. We disagree.

██ Arkansas Statutes Annotated § 43-2116 (Repl. 1977), specifically prohibits the conviction of an accused on the testimony of an accomplice unless that testimony is corroborated by other evidence tending to connect the defendant with the offense committed. The corroborating evidence must be sufficient to establish the commission of the offense and to connect the accused with it. *Redmon* v. *State*, 282 Ark. 353, 668 S.W.2d 541 (1984). The connecting evidence may be circumstantial but it must be substantial. *Olles* v. *State*, 260 Ark. 571, 542 S.W.2d 755 (1976).

■■ There is no dispute that the crime was committed. The appellant was arrested within minutes of the crime, near the crime scene, with a bottle of whiskey that Gonzales took from the liquor store and with blood on the bottle and on his jacket. Ms. Pedroso testified that she overheard the appellant planning the crime with Gonzales and Martinez. Furthermore, Mike Hicks, an off-duty dispatcher with the Ft. Smith police department, testified that he saw the appellant running from the liquor store, and that he chased the appellant until he caught up with him. Flight by an accused may constitute a corroborating circumstance. *Johnson* v. *State*, 289 Ark. 589, 715 S.W.2d 441 (1986). We find that this evidence is sufficient to connect the appellant with the commission of the crime.

The appellant's last argument concerns unsolicited comments made by prosecution witnesses that tended to implicate the appellant in other robberies. It is the appellant's contention that the trial court erred in refusing to declare a mistrial when the comments were made.

When Lazro Martinez was testifying about the planning of the robbery, he stated that he had "always been the one to drive the car" when the three of them were out running around. The appellant objected on the basis that the statement indicated that the three had been involved in other crimes. After the trial court denied the appellant's motion for a mistrial, the appellant requested and received an admonition to the jury that they should disregard any "illusions (sic) to him always driving the car."

The second statement complained of in the brief occurred when Ms. Pedroso was testifying. She indicated that she had gone to see the appellant while he was in jail, and that the appellant had told her that "they had committed theft five times." Again the trial court denied the motion for a mistrial and admonished the jury at the appellant's request.

■■ Mistrial is an extreme remedy and is only proper if the action on which it is predicated has infected the trial with so much prejudice to the defendant that justice cannot be served by a continuation of the trial. *Lasley* v. *State*, 274 Ark. 352, 625 S.W.2d 466 (1981). Because the trial judge is in a superior position to assess the possibility of prejudice, he is vested with great discretion in acting on motions for mistrial, and we will

reverse only where that discretion is manifestly abused. *Avery* v. *State*, 15 Ark. App. 134, 690 S.W.2d 732 (1985). With respect to nonresponsive answers, the rule is that:

> [W]hen a witness, in response to a proper question gives a nonresponsive answer stating matter that is incompetent and inadmissible as evidence, the trial court, on motion, should strike out the answer or so much of it as is improper and direct the jury to disregard it as evidence in the case.

*Queary* v. *State*, 259 Ark. 123, 124, 531 S.W.2d 485, 486 (1976). In the case at bar, the witnesses' nonresponsive answers did no more than raise the possibility that the appellant might have participated in criminal activity. We think that any prejudice caused by the comments was cured by the admonitions to the jury. *See Dillard* v. *State*, 20 Ark. App. 35, 723 S.W.2d 373 (1987).

Affirmed.

COULSON and MAYFIELD, JJ., agree.