STATE of Arkansas *v.* Maurice CLEMMONS

CR 98-296                                976 S.W.2d 923

Supreme Court of Arkansas
Opinion delivered October 8, 1998

*Winston Bryant*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Ass't Att'y Gen., for appellant.

No brief filed.

TOM GLAZE, Justice. Appellant Maurice Clemmons acquired four felony convictions and a revocation of probation during a period from September 1989 to mid-February 1990, and all five of those proceedings became the subject matter of Clemmons's application for writ of habeas corpus in the U.S. District Court, Eastern District, in 1996. *See Clemmons v. Norris*, PB-C-96-19 slip op. (F.3d March 26, 1996). In the federal proceeding, the district court, relying largely on *Robinson v. Norris*, 60 F.3d 457 (8th Cir. 1995), held Clemmons's right to counsel was violated in each of the five state convictions, and directed that a writ of habeas corpus should issue unless Clemmons was allowed to pursue postconviction proceedings in state court. *Id.* The Pulaski County Circuit Court, First Division, duly afforded Clemmons postconviction proceedings relating to his prior five convictions and denied him relief in all but one. The case in which the trial court granted a new trial was his February 23, 1990 conviction for burglary and theft of property which had been affirmed on direct appeal in *Clemmons v. State*, 303 Ark. 265, 795 S.W.2d 927 (1990). The circuit court found that Clemmons was denied the right to effective assistance of counsel because his trial attorney in

the burglary and theft case failed to request the trial judge's recusal. The State brings this appeal from the circuit court's granting of postconviction relief. *See State v. Herred*, 332 Ark. 241, 964 S.W.2d 391 (1998); *State v. Slocum*, 332 Ark. 207, 964 S.W.2d 388 (1998).

In *Slocum*, we discussed *Strickland v. Washington*, 466 U.S. 668 (1984), and its required two-part standard for evaluating claims of ineffective assistance of counsel: (1) the defendant must show that counsel's representation fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defense. 332 Ark. at 210, 964 S.W.2d at 390. Here, Clemmons failed to meet either prong of the *Strickland* test.

In this appeal, this court will only reverse a circuit court's granting of postconviction relief if that court's decision is clearly erroneous. *Slocum*, 332 Ark. at 211, 964 S.W.2d at 390. Thus, we initially examine the lower court's order to review why that court granted Clemmons a new trial. That order reads as follows:

> This court believes that there is merit to [Clemmons's] claim that counsel should have asked the presiding judge to recuse, since prior to the beginning of the trial, the trial judge indicated in the record that he believed he had been threatened by [Clemmons]. Even though the jury would decide issues of guilt or innocence, and further would decide on the length of punishment, because the judge had sole discretion on whether a sentence would be run concurrently or consecutively, and because a judge would make evidentiary rulings throughout the trial and decide on jury instructions, the importance of an unbiased judge is axiomatic. *The fact that the trial judge stated that the petitioner had threatened him was enough to raise questions of bias and prejudice.* The failure of counsel to seek the judge's recusal constitutes ineffective assistance of counsel in violation of [Clemmons's] Sixth Amendment right to counsel. (Emphasis added.)

The circuit court made its foregoing findings and decision to grant postconviction relief based on pretrial events that occurred at Clemmons's burglary and theft trial held before Judge Floyd Lofton. Clemmons's defense counsel, Llewellyn J. Marczuk, testifying at the postconviction hearing, related that, at the earlier trial, a

security guard had reported to Judge Lofton that Clemmons had taken a hinge from one of the courtroom doors, hid it in his sock, and intended to use it as a weapon. The hinge was found and taken from him before he harmed anyone. In another incident, Clemmons extracted a lock from a holding cell, and he later threw the lock which hit his mother. During this second episode, Clemmons purportedly threatened Judge Lofton. In a third incident, Clemmons reportedly reached for a guard's pistol during his transportation to the courtroom. Based on these occurrences, Judge Lofton placed Clemmons in leg irons and seated a uniformed officer near him during trial. This court upheld Judge Lofton's remedial actions in *Clemmons*. 303 Ark. at 267–269, 795 S.W.2d at 928–929.

Marczuk, when testifying why he decided not to request Judge Lofton to recuse after Clemmons threatened the judge, said that he believed the judge would treat Clemmons fairly and opined Judge Lofton was not biased against Clemmons. In fact, Marczuk expressed that, while he did not always agree with what Judge Lofton did, Lofton was consistent and treated everyone the same. In this context, Marczuk further related that Judge Lofton told Clemmons that if he was not guilty, he should go to trial, but if he was guilty and entered a plea, the judge would not hurt him. Marczuk said that the judge's remarks meant Lofton would run Clemmons's sentences concurrently, not consecutively.

Under *Strickland*, our review of defense counsel's performance must be highly deferential, and a fair assessment of his performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the counsel's perspective at the time. See *Slocum*, 332 Ark. at 212, 964 S.W.2d at 390. In addition, the standard of the reviewing court is to indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* We have also held on many occasions that a lawyer's choice of trial strategy that proved ineffective is not a basis for meeting the *Strickland* test. 332 Ark. at 213, 964 S.W.2d at 391.

■ Here, Marczuk was quite familiar with how Judge Lofton conducted his court, and he expressed confidence the judge would be fair to Clemmons even though Clemmons's actions during trial evoked placing him in leg irons. Moreover, Marczuk was confident that, if Clemmons chose to plead guilty at any stage of the trial, Judge Lofton would treat Clemmons favorably by running his sentences concurrently instead of consecutively. While Marczuk's trial tactics proved ineffective, his choice of strategy in no way showed his representation fell below the objective standard of reasonableness prescribed by *Strickland*.

■ Even if defense counsel Marczuk's performance could have been in some way deficient, the circuit court failed to state how that purported deficiency prejudiced Clemmons. As we held in *Lammers v. State*, 330 Ark. 324, 955 S.W.2d 489 (1997), unless there is an objective showing of bias, there must be a *communication* of bias in order to require the recusal for implied bias. No such showing was made here. As previously noted, the circuit court merely concluded that the fact Clemmons threatened Judge Lofton was enough to "raise questions of bias and prejudice." Such reasoning, if adopted, would mean a defendant, by misbehaving in court or confronting the judge, could force the judge's recusal. We have held that it is impermissible for a party or counsel to create an infirmity for purposes of requiring a judge's recusal. *See Seeco, Inc. v. Hales*, 334 Ark. 134, 969 S.W.2d 193 (1998).

■ For the foregoing reasons, we hold that the circuit court was clearly erroneous in granting Clemmons a new trial because no showing was made that defense counsel's performance was deficient as required under *Strickland*, or that Clemmons was prejudiced by counsel's deficient representation. Therefore, the trial court is reversed.